UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| ISAIAH QN BUTLER, | ) | |
| | ) | |
| Petitioner | ) | |
| | ) | |
| v. | ) | 1:26-cv-00417-LEW |
| | ) | |
| MAINE STATE PRISON, | ) | |
| | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION AFTER REVIEW OF 28 U.S.C. § 2254 PETITION

Petitioner filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254 challenging the imposition of disciplinary segregation and the use of pepper spray after an altercation at the Maine State Prison. (Complaint, ECF No. 1.) Pursuant to Rule 4 of the Rules Governing Section 2254 Cases, upon the filing of a petition, the Court must conduct a preliminary review of the petition, and "must dismiss" the petition "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *See McFarland v. Scott*, 512 U.S. 849, 856 (1994) ("Federal courts are authorized to dismiss summarily any habeas petition that appears legally insufficient on its face. . .").

After a review of the petition, I recommend that the Court dismiss the petition.

### FACTUAL ALLEGATIONS

Several inmates, including Petitioner, walked in front of two corrections officers at a desk when they were not in compliance with the standard dress code. (Petition at 7.)

The officers ordered Petitioner to "tag-in" because his pants were sagging. (*Id.* at 5, 7.)[1] After Petitioner asked for the reason why he had to "tag-in," one of the corrections officers responded that "[h]e did not [expletive] around" and placed Petitioner on automatic "ad-status." (*Id.* at 5.)[2] Petitioner was ordered to "cuff-up." (*Id.* at 8.) Petitioner threw a food tray that he had been carrying and walked away toward his cell. (*Id.*) One of the corrections officers called for assistance and discharged his pepper spray toward the back of Petitioner's head. (*Id.*) Enough pepper spray fell to the floor for the other officer to slip while restraining Petitioner. (*Id.*)

Petitioner was placed in a segregation unit, and a prison disciplinary case was opened against him for offensive physical contact with staff and for a major disturbance. (*Id.* at 1–2, 5.) A counsel substitute was assigned and visited with Petitioner on at least one occasion. (*Id.* at 10.) Petitioner was offered "half-time segregation," but he did not consider that to be an appropriate remedy. (*Id.* at 7.) On April 29, 2026, discipline was imposed that consisted of ninety days of segregation, ninety days of "LGT," and fifty-two days of "restriction." (*Id.* at 1.) Petitioner alleges that he did not attend a disciplinary hearing. (*Id.* at 5–6, 9–10.) He did not pursue an appeal from the imposed discipline. (*Id.*)

---

[1] At the Maine State Prison, a "tag-in" order is an intervention for conduct that might not warrant administrative segregation but which requires immediate confinement in a cell or room for up to one day, which serves as a de-escalation period for the resident and allows for staff to assess the situation. Maine Department of Corrections, Adult Resident Handbook Part 1 at 41, https://perma.cc/J6PR-VELJ.

[2] At the Maine State Prison, "administrative status" is a restrictive special housing assignment that lasts no longer than necessary when a resident poses a direct threat to others, poses a clear threat to the safe and secure operation of the facility, or is under direct threat from other residents. Adult Resident Handbook Part 1 at 40.

## DISCUSSION

A person in custody pursuant to the judgment of a state court may apply to a federal district court for a writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Although Petitioner is evidently in custody pursuant to the judgment of a state court, Petitioner does not present any grounds for relief to support a writ of habeas corpus that § 2254 addresses because Petitioner does not challenge the validity of the conviction or sentence that put him in custody or seek relief that would necessarily imply the invalidity of the conviction or sentence. *See Nance v. Ward,* 597 U.S. 159, 167 (2022) (summarizing the distinctions between habeas corpus and § 1983 civil complaints). Because Petitioner does not allege that the disciplinary sanction constituted a new criminal conviction or otherwise extended the length of his sentence, the relief he seeks is not authorized under § 2254.

Even if the Court were to construe the § 2254 petition as another type of filing, such as a § 1983 civil complaint, a preliminary review would be required "before docketing, if feasible or … as soon as practicable after docketing," because he is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). To the extent that Petitioner might have intended to assert a § 1983 claim against the Maine State Prison, or the Maine Department of Corrections, the claim would fail because state agencies are not considered persons under 42 U.S.C. § 1983, *Will v. Michigan Department of State Police,* 491 U.S. 58, 64 (1989), and under the doctrine of sovereign immunity exemplified by the Eleventh Amendment, states and state agencies

may not be sued by citizens in federal court, regardless of the form of relief requested. *Poirier v. Mass. Department of Corrections*, 558 F.3d 92, 97 n.6 (1st Cir. 2009).

To the extent Petitioner intended to allege that the named corrections officers violated his Fourteenth Amendment right to due process by imposing segregation for ninety days without a hearing and violated his Eighth Amendment right against the use of excessive force by using pepper spray, I will assess the claims.

**A. Due Process Claim**

The Fourteenth Amendment prohibits state deprivations of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. This protection has both substantive and procedural components. *Amsden v. Moran*, 904 F.2d 748, 753–54 (1st Cir. 1990). In either context, "a plaintiff, as a condition precedent to stating a valid claim, must exhibit a constitutionally protected interest in life, liberty, or property." *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 8 (1st Cir. 2005). A protected interest can originate from the Constitution itself or from state laws and policies. *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). In the prison context, the Supreme Court has only recognized federally-created liberty interests against transfer to a mental hospital and involuntary administration of psychotropic drugs, *see Vitek v. Jones*, 445 U.S. 480, 493 (1980); *Washington v. Harper*, 494 U.S. 210, 221-22 (1990), and state-created liberty interests are only recognized if a restraint or condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

The Supreme Court has found solitary confinement in a cell for twenty-three hours per day with one hour of solitary exercise to be an atypical and significant hardship when imposed for an indefinite period, *Wilkinson v. Austin*, 545 U.S. 209, 224 (2005), but not when imposed for thirty days, *Sandin*, 515 U.S. at 486–87. The First Circuit previously found that six weeks of similar restrictions did not constitute an atypical and significant hardship, *Skinner v. Cunningham*, 430 F.3d 483, 487 (1st Cir. 2005), and endorsed cases finding an atypical and significant hardship based on duration alone when the period approached or exceeded one year, *Perry v. Spencer*, 94 F.4th 136, 152, 155 (1st Cir. 2024). The First Circuit teaches that—at least where the period of segregation is between thirty and approximately three-hundred days—a court must conduct a fact-sensitive inquiry into "the particular prison system" and the duration and degree of the plaintiff's confinement to determine whether the inmate can show that the conditions are "irrational, inessential, or excessive" in relation to the reason for the conditions or whether "few members of the general prison population have experienced similar durations of such [conditions]." *Id.* at 152, 154 (quotations marks and modifications omitted).

Here, Petitioner did not allege any facts to permit an analysis of the degree, duration, or frequency of the conditions Petitioner experienced. For example, he did not describe how many hours per day he was confined to his cell, whether he could leave his cell for certain reasons, or how much contact was permitted with others while in or out of his cell. Petitioner did not allege any facts about the state prison system or how often inmates

experienced similar conditions.[3] Petitioner has not alleged how long he was in administrative segregation, and although he alleged that a disciplinary sanction of ninety days was imposed, he does not allege whether he served that time or how much of that time he actually spent in disciplinary segregation. Because the pleading does not contain sufficient relevant alleged facts, the petition does not plausibly show that Petitioner suffered a deprivation of a protected liberty interest.[4]

Even if Petitioner had alleged facts to show a deprivation of a protected liberty interest, the Constitution would only require informal procedures like notice of the factual basis for the confinement and an opportunity to present the inmate's views to the official charged with decision. *See id.* at 161. Although Petitioner alleges that he was "never afforded a disciplinary hearing" or a right to an appeal and "was never sent to or escorted to a hearing," (Petition at 5–7, 10), the allegations do not contact enough facts to support a claim. Petitioner's assertion that he was not afforded a disciplinary hearing, without context, is insufficient. For instance, Petitioner does not explain in the petition whether he had no opportunity at all to present his views or whether he simply did not invoke the

---

[3] A brief review of the regulations suggests that Maine's disciplinary segregation measures are significantly less restrictive than the ones at issue in *Sandin*, *Wilkinson,* and *Perry*. Maine Department of Corrections, Adult Resident Handbook Part 2 at 70–71, https://perma.cc/E8RX-ADF2.

[4] Although the First Circuit found in *Perry* that administrative segregation "of more than ninety days" was an atypical and significant hardship, that conclusion was limited to "the prison system at issue in Perry's case" because it was based in part on "the regulations then in place" and because there was an "absence of a showing by the defendants regarding the frequency with which inmates in that system are subjected to such lengthy confinement for administrative reasons." *Id.* at 160. Petitioner does not allege that Maine's regulations prohibit administrative segregation under any circumstances beyond ninety days without a hearing, and Petitioner does not allege that he was in administrative segregation for more than a short duration or that he was in solitary confinement for more than ninety days total between administrative segregation and disciplinary segregation.

available options, or whether his counsel substitute attended or waived his right to be present for the hearing. This information is particularly necessary in this case to assert an actionable claim given the allegations that undermine Petitioner's attempt to assert a claim: Petitioner evidently received notice of the disciplinary charges against him, he was assigned a counsel substitute, he evidently received notice of the discipline imposed for the specific findings of guilt, because the offenses and sanction are included in the petition, and he was apparently offered a resolution of "part-time" segregation (Petition at 7), suggesting that he received some process and was involved in the process.[5] While Petitioner's filing can be construed to assert that he did not attend a hearing, Petitioner did not provide any facts or explanation to support the conclusory allegation that there was no available opportunity to be heard and no way to appeal from the decision. Under the circumstances, Petitioner's bald assertion that he was not afforded a hearing is insufficient to support a due process claim.

Because Petitioner failed to include sufficient facts to show that any of the named individuals violated his due process rights, a civil claim for an alleged violation would fail.

## B. Excessive Force Claim

The Eighth Amendment to the United States Constitution, which applies to the states via the Fourteenth Amendment, prohibits excessive bail, excessive fines, and the infliction of cruel and unusual punishments. U.S. Const. amend. VIII. A punishment is cruel and

[5] The State's policy handbook lists offenses, including the ones Petitioner mentioned, and provides for hearings, counsel substitutes, notices of decisions, and an appeal process. Maine Department of Corrections, Adult Resident Handbook Part 2 at 51–82, https://perma.cc/E8RX-ADF2.

unusual if it involves the unnecessary and wanton infliction of pain. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). The question whether a particular use of force "inflicted unnecessary and wanton pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson v. McMillian*, 503 U.S. 1, 6 – 7 (1992) (internal quotations marks omitted). A claim of excessive force in violation of the Eighth Amendment "has two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Staples v. Gerry*, 923 F.3d 7, 13 (1st Cir. 2019) (quoting *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009)).

In this case, Petitioner's description of the circumstances regarding the use of the pepper spray is limited, and the basic facts alleged do not support an actionable excessive force claim. While it is unconstitutional to use significant force (like pepper spray) on a compliant, nonresistant, non-threatening, or already-subdued person, *see Segrain v. Duffy*, 118 F.4th 45, 60 (1st Cir. 2024); *Parker v. Gerrish*, 547 F.3d 1, 10 (1st Cir. 2008), the petition lacks sufficient facts to support a plausible inference that Petitioner was compliant, nonresistant, non-threatening, or already subdued. Petitioner threw his food tray (evidently in anger or dissatisfaction with the orders of the corrections officers) and attempted to leave the scene while refusing an order to be handcuffed. Although Petitioner maintains that he was attempting to return to his cell, there are no alleged facts to suggest that the corrections officers had any way to know what Petitioner intended. The facts alleged in the petition do not plausibly show that the officer's conduct in the use of the pepper spray was not a good faith effort to maintain or restore discipline.

In sum, to the extent Petitioner attempted to assert an Eighth Amendment excessive force claim, the claim would fail.

## CONCLUSION

After a preliminary review in accordance with Rule 4 of the Rules Governing Section 2254 Cases, for the reasons explained above, I recommend the Court dismiss the petition. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2254 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

Further, to the extent the petition is construed as an attempt to allege a § 1983 claim, because Petitioner has failed to allege an actionable claim, I recommend the Court dismiss the matter.

## NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof.
>
> Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 30th day of October, 2026.